UNION CENTRAL LIFE INSURANCE COMPANY, Appellant, v. O. B. CHAPIN.

Removal of Tax Delinquent: CERTIFICATION OF TAX TO COUNTY OF REMOVAL: *Partnership moving and partners remaining.* Code, section 1409, provides that, where a person owing delinquent taxes in any county moves to another county, leaving no property out of which the taxes can be made, the treasurer of the county where the taxes are delinquent shall make out an absract thereof, and forward to the treasurer of the county where the delinquent has property, where it shall have the same effect as a levy of taxes in that county. *Held,* that the treasurer of a county where a partnership owes delinquent personal taxes has no authority to certify such taxes to the treasurer of the county where the partnership owns realty when all the partners continue to reside and own property in the county where the taxes are delinquent; and hence the holder of a mortgage on such partnership realty, which provides that the mortgagee may pay any delinquent taxes that have become a charge on the land, and that the whole debt shall then become due, and the taxes made a lien on the land, is not entitled to pay the delinquent personal taxes, and maintain foreclosure thereon.

AUTHORITY TO CERTIFY: *What certificate must recite.* Where a county treasurer has certified delinquent taxes from one county to another, under Code, section 1409, authorizing such certification in case the delinquent has removed from the county where the taxes were levied, leaving no property there, the failure of the certificate to show these facts is not a mere irregularity such as will not prevent the taxes from becoming a charge on delinquent's land in the county to which they were certified, but is a fatal defect going to the authority of the treasurer to issue the certificate.

*Appeal from Sioux District Court.*—HON. WILLIAM HUTCHINSON, Judge.

THURSDAY, APRIL 11, 1901.

PLAINTIFF, as mortgagee of real estate, brings this action to foreclose its mortgage as to certain taxes assessed against said real estate and certain personal taxes against the mortgagors, charged against the same, both of which taxes have been paid by the plaintiff. The defendant, the holder of the legal title subject to plaintiff's mortgage, makes tender of the taxes assessed against the land and paid by the plaintiff, and denies that said personal taxes were legally charged against the land, and therefore denies plaintiff's right to foreclose or recover on account of said taxes. Decree was rendered dismissing plaintiff's petition, from which the plaintiff appeals.—*Affirmed.*

*Connor & Weaver* for appellant.

*Albrook & Lundy* for appellee.

GIVEN, C. J.—I. This case was submitted upon the pleadings and an agreed statement of facts. The following, we think, is sufficient statement to show the issues and material facts: Frank P. Lewis, Seth M. Hadley, and Lindley M. Rash were co-partners under the firm name of Lewis, Hadley & Rash, in business as retail merchants at New Providence, in Hardin county, Iowa, and were assessed in that county upon their stock of merchandise for the years 1893, 1894, and 1895 in the aggregate sum of $320.28 taxes, which they failed to pay. In February, 1895, they exchanged their said stock of goods for a half section of land in Sioux county, Iowa, to which they received title. The goods remained in Hardin county until May, 1895, when they were taken to Cherokee county, Iowa. On February 17, 1896, Lewis, Hadley, and Rash, their wives joining therein, executed to the plaintiff a mortgage on said land to secure a loan of $4,000, which mortgage provides as follows: "Said first party shall not suffer waste; shall pay all taxes and assessments upon said property, to whomsoever

let or assessed, and including personal taxes, before delin-
quent; and shall deliver to said party at its office in Cincin-
nati, Ohio, immediately upon payment of all of the taxes
and assessments aforesaid, duplicate receipts of the proper
officer for the payment thereof; * * * a failure to com-
ply with any one of the agreements hereof causing the whole
debt at once to become due and collectible, if said second
party or assigns so elect. * * * All money paid by said
second party or assigns for insurance or taxes shall bear in-
terest at the rate of eight per cent. per annum, payable annu-
ally, and be a lien on said land under this mortgage." On
the same day that plaintiff's mortgage was made, said mort-
gagors executed another mortgage on said land to Van Evera
& Robinson to secure a loan of $500, which contained the
same provisions as to taxes, and provided that it was junior
to plaintiff's mortgage. A third mortgage, junior to both
these, was given in March, 1896, to the H. L. Spencer Com-
pany. These mortgages were recorded soon after their execu-
tion. On January 5, 1897, the defendant obtained a judg-
ment for $290 in Hardin county against said firm, and of
this judgment he filed a transcript in Sioux county on Jan-
uary 15, 1897. On February 23, 1897, suit was brought in
Sioux county to foreclose said second mortgage, to which
action this plaintiff was not made a party. Decree of fore-
closure was rendered, and on June 26, 1897, the land was
sold to James Van Evera thereunder. The H. L. Spencer
Company redeemed from that sale and the defendant as
judgment creditor redeemed from said company, receiving
an assignment of the sheriff certificate, under which he re-
ceived a sheriff's deed July 2, 1898. On July 11, 1896, the
treasurer of Hardin county certified said unpaid personal
taxes of 1893, 1894, and 1895 by certificate in form as fol-
lows making by seperate certificate for each year, differing
only in the year and amounts:

"Treasurer's Office, Hardin County, Iowa.
"Eldora, July11, 1896.

"I, M. W. Moir, treasurer of said county, do hereby certify that the following is a correct abstract of the taxes assessed in said county for the year 1893 against Lewis, Hadley & Rash, late a resident of Providence township, in said county, but who is now supposed to be a resident of Sioux county, Iowa, which said taxes are due and remain unpaid as herein set forth.    Personal value, $3,500.00:

KIND OF TAX.

| | |
|---|---|
| State, county, school, road, school hosue, district tax, bridge, pauper......................................................$ | 91.00 |
| Penalty and pauper .......................................... | 25.48 |
| Total ..............................................$ | 116.48 |

"M. W. MOIR, Treasurer."

These certificates were sent to and received by the treasurer of Sioux county, and entered upon the records of his office July 14, 1896.    At the tax sale in December, 1896, the treasurer of Sioux county sold said land for delinquent taxes aggregating $429.08, of which $25.39 were taxes on the land, and the remainder for said personal taxes.    Plaintiff was the purchaser at said sale, and as such paid all of said taxes.    It is admitted that said co-partnership has never been dissolved, that it and all the members thereof have continuously resided in Hardin county, and that each of said members has owned property in that county.    It appears that on November 26, 1896, the plaintiff, through Van Evera & Robinson, its then agents, notified said mortgagors to pay said taxes, and that they failed to do so.    The defendant concedes the plaintiff's right to recover the amount of the taxes assessed against the land, and has paid that sum to the auditor of the county in redemption therefrom; therefore the contention is as to plaintiff's right to foreclose on account of the payment of said personal taxes.

II.    There is no doubt that the plaintiff, under the terms of its mortgage, had a right to pay all delinquent taxes, real and personal, legally charged against the land, and to recover the amount thereof under its mortgage; and equally clear, we think, that the defendant has a right to

redeem from the plaintiff's mortgage. The controlling con-
tention is whether said personal taxes were so charged
against said land as that plaintiff is entitled to recover for
the payment of the same under its mortgage. The fact that
plaintiff paid the taxes by purchasing at the tax sale gives
it no greater rights than if it had paid them after delin-
quent and before sale. The defendant's contentions are that
said personal taxes were not legally charged against the land,
for that said firm has not been dissolved; that it, nor any of
its members, had removed from Hardin county, but had
continued to reside therein; and that each of said members
had property in said county that might be subjected to the
payment of taxes. Also that, if plaintiff has a lien for the
taxes paid by it, it is junior to defendant's rights under his
sheriff's deed. The plaintiff claims—and correctly so—that,
as it was not a party to the foreclosure of the second mort-
gage, it is not concluded as to the claims it now makes. It
claims that, as defendant's judgment was not rendered nor
transcripted until after plaintiff had paid said taxes, the
plaintiff's claim for the taxes is prior to any claim of the
defendant under his judgment. That plaintiff having noti-
fied said Van Evera & Robinson and the said mortgagors of
the existence of said taxes, and demanded that they pay the
same, and they having failed to do so, the defendant is es-
topped from contesting the validity of the lien of said taxes,
and from resisting plaintiff's claim thereto under its mort-
gage. Plaintiff asks that, if defendant's lien under his sher-
iff's deed is held prior to plaintiff's for the taxes, it be per-
mitted to redeem from the defendant.

III. Under the statutes as they existed at the time
of these transactions, individuals composing a co-partnership,
were personally liable for taxes due from the partnership
and taxes due upon personal property were a lien upon real
property owned within the county where assessed, and might
be collected by a sale of such real estate or by seizing and
selling personal property. Section 861 of the Code of 1873:

(section 1409, present Code) is as follows: "In all cases of delinquent taxes in any county, where the person upon whose property the same were levied shall have removed into another county, leaving no property within the county where the taxes were levied out of which the same can be made, the treasurer of the county where said taxes are delinquent shall make out a certified abstract thereof, and forward the same to the treasurer of the county in which the delinquent resides or has property, when the treasurer transmitting said abstract has reason to believe that said taxes can be collected thereby." Section 862 provides that on filing the abstract in the office of the treasurer to whom the same was sent "it shall have the full force and effect of a levy of taxes in that county, and the collection of the same shall be proceeded with in the same manner provided by law for the collection of other taxes." It requires no citation of authoriy to show that statutes prescribing the mode of assessing and collecting taxes must be strictly pursued. But see *Tallman v. Treasurer*, 12 Iowa, 531; *Chicago, R. I. & P. R. R. Co. v. City of Davenport*, 51 Iowa, 451; *Jaffray v. Anderson*, 66 Iowa, 719; *Bibbins v. Clark*, 90 Iowa, 235. The facts being that said co-partnership continued to exist, and it and its members continued to reside in Hardin county, and that said members had some property in that county subject to be seized for the payment of said personal taxes, we think the certification of said taxes to the treasurer of Sioux county was unauthorized. It may be that the property owned in Hardin county by the members of the co-partnership was not sufficient to pay these personal taxes, but the fact remains that neither they nor their co-partnership had removed from that county. We have seen that these taxes were assessed upon said merchandise for the years 1893, 1894, and 1895, that said firm continued to own the goods until in February, 1895, and that the purchasers continued to keep the goods in Hardin county until May, 1895. Under chapter 35, Acts Twenty-fourth General Assembly, then in force, said taxes

were a lien on said stock of goods, even as against the purchasers, and therefore it cannot be said that there was no property in Hardin county out of which the taxes could have been made. Plaintiff's counsel contend that the error in the treasurer's certificate as to the residence of the tax debtors and the omission to show that they had left no property in Hardin county are mere irregularities, and cites cases to the effect that equity will not interfere to prevent the collection of taxes authorized by law to which the property is justly liable, on account of irregularities; notably *Litchfield v.Hamilton County,*40 Iowa, 66. Removal from Hardin county, "leaving no property within the county where the taxes were levied out of which the same can be made," is the only basis upon which the certification of the taxes to another county for collection may be made. These conditions did not exist; hence there was no authority for the certification, and the land was not justly liable for the taxes. The absence of these essential facts is quite different from the irregularities found in the cited cases. In *Chicago R. & M. R. Co. v. Carroll County,* 41 Iowa, 155, the treasurer omitted to note that the assessment was made by him, and this was held to be an irregularity that did not affect the legality of the taxes. In *Sioux City & St. P. R. Co. v. Osceola County,* 45 Iowa, 169, matter held to be irregularity was the charge that the tax had not been levied by the township trustees, was not carried out against the property by the township clerks, and that they did not certify a list of delinquent taxes. In *Conway v. Younkin,* 28 Iowa, 295, the error complained of was an omission of the assessor to insert the name of the person whom he intended to assess jointly with another as owners of the property. In the *Case of Litchfield, supra,* the matter held to be irregularities were in the classification of the lands by the supervisor as to their values, the assessments of lands to unknown owners in 80-acre tracts, the want of the warrant to the tax list, and the

failure of the treasurer to offer the lands for sale at a time required by law. Our conclusion is that under the facts the treasurer of Hardin county was not authorized to make a certified abstract of said personal taxes, and forward the same to the treasurer of Sioux county for collection, and that such certification did not have the effect of a levy on the mortgaged lans, nor make said land chargeable with said personal tax.

IV. There is no question but that the plaintiff had a right to protect its security by providing, as was done, in its mortgage, as to the payment of personal as well as real taxes that might become a charge upon the land. That these personal taxes were due and owing by the mortgagors was no reason why plaintiff might pay and make them a charge on the land under its mortgage, unless they had become a lien upon the land to the prejudice of the security. It would not be claimed that plaintiff might have paid these taxes in Hardin county, and made them a charge upon the land under the mortgage, merely because they were due and unpaid. We do not see why the fact that the plaintiff notified the mortgagors and the mortgagees in the second mortgage to pay the taxes, nor the fact that the foreclosure of the second mortgage, under which defendant holds his title, and his judgment, were after the tax sale, render these personal taxes a valid lien on the land; neither do we see any reason why the defendant should be estopped from denying plaintiff's right to recover these taxes. He did nothing to induce plaintiff to pay these taxes. Plaintiff presents a number of contentions, but, as we view the case, they are all answered by the conclusion that the certification of the abstracts of these personal taxes to Sioux county was unauthorized under the facts; that they did not, therefore, become a charge upon the land; and that plaintiff was not entitled to make them so, under its mortgage, by paying the same. We think the decree is correct, and it is AFFIRMED.